ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    Email: jeffrey.bornstein@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:24CR00192 AGT |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date: September 9, 2024 |
| NICHOLAS TANNLER, | Time: 10:30 a.m. |
| Defendant. | Court: Hon. Alex G. Tse |

# I. INTRODUCTION AND SUMMARY

For the reasons set forth in the Presentence Report and as discussed below, the Unites States agrees with the Sentencing Recommendation in the Presentence Report with one addition. The PSR recommends the following sentence: 18 months' Probation, a fine of $500, restitution to the NPS in the amount of $236.28, 10 hours of community service as directed by Probation, drug treatment and testing, no alcohol use, and the payment of the mandatory $25 special assessment. The United States also seeks a stay away order from any National Park (or at least 100 yards away from any of the buildings in the National Park), except if the Defendant is working for his employer in a legitimate tree trimming or other work reason. The combination of these conditions is sufficient by not greater than necessary to accomplish all the goals of sentencing.

## A. Statement of Facts[1]

On October 22, 2021, at approximately 9:09 p.m., National Park Service ("NPS") Rangers Christopher Mengak and Julian Dupont responded to a report of a break-in at the North District Operations Center. NDOC is located within the legislative boundaries of Point Reyes National Seashore at 17500 Sir Francis Drake Boulevard.

A radio operator monitoring the surveillance video live feed of NDOC contacted Ranger Mengak after he observed a suspect, later identified as Tannler, enter the building. The radio operator gave Ranger Mengak a physical description of the suspect. Ranger Mengak and Ranger Dupont responded immediately, identified a suspect matching the description relayed to him earlier, and detained him. No one else around at this location and time.

### 1. Mr. Tannler's Arrest

When the rangers arrived, they observed an adult white male leaving the scene on an e-bike.[2] The suspect was later identified as Nicholas Brandon Tannler. Tannler failed to stop after being asked

---

[1] See PSR at ¶¶6—11.

[2] Mr. Tannler was departing the scene on an e-bike between the NDOC Building and the law enforcement garage building.

six times, at which point the rangers arrested Tannler. Tannler was advised of his *Miranda* rights and said he understood his rights.

### 2. Mr. Tannler's Interview

After being *Mirandized*, Mr. Tannler told officers he "might have gone into the building" and then said "I did" go into the building. Mr. Tannler said he gained access to the building through the garage doors. Rangers conducted a consent search and located a number of items in the defendant's bag, including a "Makita" brand heat gun ($133 retail price) known to have been inside the NDOC, an NPS employee ID card belonging to a retired law enforcement Ranger who still had personal effects at a desk inside the NDOC, and a full booklet of NPS warning notices identical to several found inside the NDOC. In addition, Rangers located the following items in Tannler's bag: multiple rolls of duct tape and electrical tape, meth, a broken glass meth pipe, two marijuana buds, and a gray marijuana dugout smoking pipe.

### 3. Outstanding Warrants at that Time

The Rangers then learned that Mr. Tannler had an outstanding warrant out of Marin County for violating California Vehicle Code Section 23152 (Driving Under the Influence). Mr. Tannler was transported to Marin County and booked into custody on the outstanding warrant.

That night, the Rangers conducted a damage assessment walk-through of the NDOC Building. They observed the following: (1) the locked, north-side door had been kicked-in; (2) on the second floor, there was a badly damaged air-flow grate leading into the file room, where files had been rifled through and scattered; (3) bent door on a file cabinet; (4) damaged door handle as the door was locked; and (5) a broken window (from where Tannler likely entered the NDOC).

### 4. Video Surveillance

According to video surveillance footage, a white male can be seen breaking a window and climbing into the NDOC building. The white male enters the room and begins searching through

materials on the desk. As the white male nears the security camera, Mr. Tannler's face is clearly visible. Tannler is recorded rotating the security camera backward, then dismantling it. The video surveillance footage was captured by cameras owned by the Maritime Radio Historical Society, were in good working order at the time of the incident, and had accurate time stamps when recording the break-in.

As set forth in the PSR the government is seeking restitution in the amount of $236.28, based on the six hours of work to repair and secure the Park building. See PSR at ¶11.

## II.   APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

Base Offense Level:  For a violation of 18 U.S.C. § 1361 (USSG §2B1.1(a)(2)):         6

a. Acceptance of Responsibility, U.S.S.G. § 3E1.1:                                  -2

b. Adjusted Offense Level:                                                           4

According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of two establishes a criminal history category of II.[3] An Adjusted Offense Level 4, coupled with Criminal History Category II results in an advisory Guidelines range of 0 to 6 months and up to 3 years' Probation.

## III.   SENTENCING RECOMMENDATION

The government joins in the recommended sentence made by Probation.  The combination of 18 months' probation on the conditions that Probation recommends, as augmented with a tailored stay away order, are sufficient but not greater than necessary under all the sentencing factors. While Mr. Tannler's crime can be seen as a nuisance type of crime, it could have been much worse.  Being high especially on meth and committing the crimes he committed could have resulted in much more serious consequences for him and others.

---

[3] The total criminal history score is two. One point for driving under the influence of alcohol in 2015 followed by subsequent arrests in 2016, 2019, 2021(twice) and 2023. PSR at ¶30.  He also has a trial for his probation violations set for January 21, 2025.  The second point was for driving under the influence and refusing a test and while having a suspended license in 2016. PSR at ¶31. He also had an arrest for possession of burglary tools and controlled substances in 2023 in San Rafael. PSR at ¶35. That resulted in Diversion in 2024.

### A. Section 3553 factors

#### 1. Nature and circumstances of the offense and history and characteristics of the defendant

While there is not plea agreement in this case, the Defendant has expressed in his statement to Probation that he takes responsibility for his actions. He was not working at the time of this offense and as he put it, he was "borrowing money from [his]mom to mostly buy meth." PSR at ¶13. He said that while he is "unable to articulate [his] exact thinking at the time, …it was scattered and not highly logical, as is the nature of meth." Id.

He needs to keep himself sober even if times get tough. That is especially true as it relates to his drug abuse. Not going into a live-in program is risky in our view; AA and NA are helpful to be sure, but a residential treatment program would almost certainly be better and likely have greater meaning. Because he is employed, however, we are satisfied that he at least has a good reason to stay sober. But if that should change, the 18 months of supervision will be important to ensure that he gets the treatment he needs to stay sober, off meth and importantly, not self-destruct and commit new crimes.

#### 2. Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant

The combination of the conditions we are recommending, the 18-month term of supervision, drug and alcohol testing and treatment as needed, and the community service are all important in our view. So too is the stay away order from the National Parks unless there on a job or at least 100 yards away from any buildings in any National Park. While Mr. Tannler's conduct can be seen as a side effect of his meth and alcohol abuse, it is potentially dangerous if he were to relapse and go back to his old ways. Breaking into buildings at night, having law enforcement respond, can sometimes lead to tragic outcomes. So too can driving under the influence. While we want Mr. Tannler to succeed, we want to ensure that he has enough supervision and guardrails to be successful.

### B. The necessity of the proposed supervised release special conditions

The stay-away condition is also necessary given the circumstances of this case. The limited stay away order we recommend will be important to ensure that he does not relapse or at least put himself in harm's way if he does by tempting him to go back to his old ways of breaking into buildings in Park

Service lands.

### IV.     CONCLUSION

For all the reasons set forth herein, the government recommends that the Court sentence the defendant to 18 months' Probation, a fine of $500, restitution to the NPS in the amount of $236.28, 10 hours of community service as directed by Probation, drug treatment and testing, no alcohol use, and the payment of the mandatory $25 special assessment. In addition, the United States also seeks a stay away order from any National Park (or at least a stay away order that restricts the Defendant from going within of 100 yards of any of the buildings in any National Park), except if the Defendant is working for his employer in a legitimate tree trimming or other legitimate work reason.

DATED: September 3, 2024                                    Respectfully Submitted,

                                                            ISMAIL J. RAMSEY
                                                            United States Attorney


                                                             _/s/ Jeffrey Bornstein_
                                                            JEFFREY BORNSTEIN
                                                            Assistant United States Attorney