JODI LINKER, Bar Number 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar Number 313445
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Angela_Chuang@fd.org

Counsel for Defendant TANNLER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 24–192 AGT |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | **Court:** Courtroom A, 15th Floor |
| NICHOLAS TANNLER, | **Hearing Date:** September 10, 2024 |
| Defendant. | **Hearing Time:** 10:30 a.m. |

**INTRODUCTION**

Nicholas Tannler comes before the Court for sentencing for the misdemeanor offense of destruction of government property. The charges stemmed from his breaking a window of a National Park Service ("NPS") building nearly three years ago during a difficult period in his life when he was unemployed and high on meth. In the time since he committed the instant offense, he was able to address his addiction and stop using meth—a significant step in his recovery that he took of his own accord with the support of his wife and by separating himself from the peers that he used to use drugs with in the past. His stability was further aided by his steady employment as a tree climber since 2022. In short, Mr. Tannler was already well on the way towards rehabilitation even before charges were filed in this matter earlier this year.

He has taken full responsibility for and deeply regrets his actions. He pleaded guilty at the first court date following his initial appearance, and is prepared to atone for his conduct by performing community service and paying restitution for the damage that he caused. Now that he is no longer abusing meth, his mind is clear and he readily acknowledges that his criminal conduct was wrong and a reflection of poor decision-marking on his part. As someone who prizes the natural resources of the area in which he lives, Mr. Tannler understands the importance and sanctity of NPS property. He is committed to continue to steer clear of the drugs that led to his commission of this offense, and asks the Court to take into account the rehabilitation that he has already achieved thus far when determining an appropriate sentence. He respectfully requests that the Court impose a sentence of three months of probation with a special condition of 10 hours of community service and $236.28 in restitution. Such a sentence is appropriate based on the factors delineated in 18 U.S.C. § 3553(a).

**ARGUMENT**

**I.     A Sentence Of Three Months of Probation Would Be Sufficient But Not Greater Than Necessary To Achieve The Sentencing Goals Of § 3553(a)**

In sentencing Mr. Tannler, this Court must consider all of the directives set forth in 18 U.S.C. § 3553(a); the Guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir.

1  2008) (internal quotations omitted). Those goals include the need to: (1) reflect the seriousness of the

2  offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford

3  adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant;

4  and (6) provide the defendant with needed educational or vocational training, medical care, or other

5  correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also

6  directs the Court to consider a number of additional factors, including: the nature and circumstances

7  of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds

8  of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent

9  Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing

10  disparities, § 3553(a)(6); and the need to provide restitution to any victims of the offense, §

11  3553(a)(7).

12      Mr. Tannler agrees with Guidelines calculations in the Presentence Report ("PSR"). With a

13  final offense level of 4 and a Criminal History Category of II based on two criminal history points,

14  the advisory Guidelines range is 0–6 months. ¶¶ 23, 33, 55.

15      **A.**    **The nature and circumstances of the offense**

16      On October 22, 2021, Mr. Tannler broke into a radio station building owned by the National

17  Park Service. PSR ¶ 6. He did so by breaking a window. *Id.* ¶ 13. He took various small items,

18  including a heat gun, all of which were recovered from him when he was arrested leaving the scene

19  by NPS rangers. *Id.* ¶¶ 6–8.  The rangers also found a small amount of meth and marijuana, as well as

20  smoking paraphernalia, in his possession. *Id.* ¶ 8.

21      At the time of the offense, Mr. Tannler had been out of work and unemployed for over a year

22  after the company where he had worked for six years shut down during the COVID-19 pandemic. *See*

23  *id.* ¶¶ 13, 50. He was struggling with a meth addiction that scattered his thinking and led him to poor

24  decisions such as the one he made here. He made a mistake and engaged in this conduct while under

25  the influence of meth and at a difficult time in his life. Mr. Tannler has taken responsibility for his

26  actions and took the earliest opportunity to plead guilty at the first hearing following his initial

27  appearance. The Court should take into consideration such timely and extraordinary acceptance of

28  responsibility.

**B.    The history and characteristics of Mr. Tannler**

Mr. Tannler grew up in a family that unfortunately was no stranger to issues with substance abuse. His father abandoned the family due to his own drug addiction when Mr. Tannler was just two years old. *Id.* ¶ 42. As his mother put it to him and his siblings, their father left to "go do drugs under a bridge." Though his mother ended up remarrying, that did not undo the negative impact that his father's abandonment left on the children. It was hard for them to understand why their father was no longer a part of their lives. The difficulty of dealing with that trauma, in addition to the fact that numerous family members were alcoholics, no doubt played some role in the development of Mr. Tannler's and his brothers' own substance abuse and mental health issues. At various points in time, all three of them struggled with drug addictions to varying degrees. His oldest brother was able to get sober in his mid-20's, but Mr. Tannler's twin brother continues to use drugs and has not been able to live independently of their parents. *Id.*

Mr. Tannler's own substance misuse began with drinking alcohol and smoking marijuana, which he used regularly in his teens and into his twenties. *See id.* ¶ 48. In his later teenage years, he began using harder drugs, such as cocaine, acid, and shrooms. *Id.* But it was his meth use that caused him the most trouble. He began using meth sporadically at the age of 20, and it became especially problematic around the age of 27. *Id.* In the months leading up to the instant offense, his meth addiction had taken over much of his life. The fact that the tree company that he had worked for since 2014 shut down in 2020 due to the pandemic did not help matters, as it left him with no employment to keep himself occupied and away from drugs.

His criminal record consists of only misdemeanor convictions, with most of them over a decade old at this point. The nature of those charges generally is indicative of someone with substance abuse issues, which indeed was his underlying problem. *See id.* ¶¶ 26–31. His most recent conviction prior to the instant offense was a misdemeanor DUI from 2016. *Id.* ¶ 31. After that, Mr. Tannler was able to largely curtail his alcohol usage to the point where he is now a responsible drinker—he drinks alcohol occasionally and not to excess. In recent years, it was really his meth addiction that got the better of him, impairing his judgment and decision-making as he looked for ways to support his habit. That is what drove him to engage in the conduct here, as he readily acknowledges and recognizes

1   now that he has stopped using meth. *See id.* ¶ 13.

2          Since he committed this offense nearly three years ago, Mr. Tannler has come a long way and

3   attributes much of his success to the support of his wife, who has played an integral role in helping

4   him to stop using meth. Even before charges were officially filed in this matter, he had successfully

5   stopped his meth usage already on his own. *See id.* ¶ 48. That is no small feat for someone dealing

6   with an addiction, and indicates that he is motivated to overcome his past substance abuse for reasons

7   other than court-ordered obligations or interventions. He has also been gainfully employed as an

8   auxiliary climber since 2022—a job that he loves for which he would like to earn his official arborist

9   license. *Id.* ¶¶ 45, 50. He has successfully managed to redirect his energies away from using meth and

10  instead into productive things such as his work, outdoor activities, and hobbies like woodcarving. *Id.*

11  ¶ 44.

12         In sum, Mr. Tannler has already come a long way in his recovery and rehabilitation even before

13  he first came before this Court earlier this year. In light of that progress, as well as the fact that this

14  offense occurred nearly three years ago at this point, a longer probationary sentence is not necessary.

15  Three months of probation would be sufficient to keep him on the path that he has already begun on

16  his own, to ensure that he fulfills some of the special conditions of probation that are recommended

17  and that he does not oppose (i.e., 10 hours of community service and $236.28 restitution), and to

18  provide him access to additional resources if he runs into any obstacles in his recovery.

19         **C.     The Court should not impose a stay-away order**

20         The government has requested that the Court also impose a stay-away order from any National

21  Park, or at least an order prohibiting Mr. Tannler from going within 100 yards of any National Parks

22  building. *See* Dkt. No. 15 at 5–6. Mr. Tannler opposes such an order as unreasonable and

23  unwarranted, and Probation has not included such an order in its recommended special conditions.

24  Mr. Tannler lives in Inverness, which is essentially surrounded by National Parks lands. Imposing a

25  broad stay-away order would significantly restrict his ability to move around the region in which he

26  lives, and would also restrict his ability to engage in the very activities that help him to stay away

27  from meth (i.e., hiking, biking). A more limited stay-away order directing him to stay at least 100

28  yards away from National Parks buildings would still be unjustified for the act of breaking a window

1  three years ago. Certainly, if Mr. Tannler were to damage any property or commit another crime at a

2  National Parks building, then he could and presumably would be charged accordingly. A stay-away

3  order in addition to that would be a greater deprivation of liberty than necessary to achieve the

4  sentencing goals in § 3553(a).

5      **D.**     **Objection to proposed Special Condition 3**

6      Mr. Tannler objects to the imposition of proposed Special Condition 3 that would require him

7  to "abstain from the use of all alcoholic beverages." PSR Recommendation at 3. Though he did drink

8  too much when he was younger, alcohol has not been a problem for him in years and as previously

9  noted, his last DUI conviction was in 2016—eight years ago. Mr. Tannler now uses alcohol

10  occasionally and responsibly, and it did not play a role in his commission of this offense. Under these

11  circumstances, requiring him to completely abstain from the use of all alcoholic beverages would

12  constitute a greater deprivation of liberty than necessary. If the Court nonetheless is inclined to

13  impose a special condition relating to alcohol usage, it should impose a more limited condition

14  instead directing him to refrain from using alcohol to excess. This more narrowly tailored condition

15  would be adequate to address any concerns about Mr. Tannler's alcohol usage.

16  **CONCLUSION**

17      For all the reasons set forth above, Mr. Tannler respectfully requests that the Court impose a

18  sentence of three months of probation. Such a sentence is sufficient but not greater than necessary to

19  achieve the sentencing goals laid out in § 3553(a).

20

21      Dated:     September 3, 2024          Respectfully submitted,

22                                              JODI LINKER

23                                              Federal Public Defender
                                            Northern District of California

24

25                                        /S

                                          ANGELA CHUANG
                                          Assistant Federal Public Defender

26

27

28